## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 29 2017, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Paula M. Sauer
Danville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| A.P.,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | November 29, 2017<br><br>Court of Appeals Case No.<br>32A04-1708-JV-1916<br><br>Appeal from the Hendricks<br>Superior Court<br><br>The Honorable Karen M. Love,<br>Judge<br><br>Trial Court Cause No.<br>32D03-1608-JD-228 |

**Brown, Judge.**

[1] A.P. appeals the trial court's order to modify supervision and commit her to the Department of Correction for housing in any correctional facility for children. A.P. raises one issue which we revise and restate as whether the court abused its discretion in entering its order. We affirm.

*Facts and Procedural History*

[2] On or about late August 27, 2016, A.P. met a woman for a fight and during the fight stabbed her with a knife causing lacerations to the woman's cheek and arm requiring her to go to the hospital. On August 29, 2016, the State filed a delinquency petition which alleged that A.P., who was born on August 19, 1999, committed acts that, if committed by an adult, would constitute aggravated battery, battery resulting in serious bodily injury, and battery by means of a deadly weapon.

[3] On September 12, 2016, A.P. entered an admission and the court found as true the delinquent acts of aggravated battery as a level 3 felony if committed by an adult and the acts of battery resulting in serious bodily injury and battery as level 5 felonies if committed by an adult. The court released A.P. to the custody of her parents, ordered that she be placed under the supervision of the Hendricks County Probation Department for a period of twenty-four months, awarded wardship of A.P. to the Department of Correction (the "DOC") for housing in any correctional facility for children or any community based correctional facility for children, and ordered that the commitment to wardship was suspended on the condition that A.P. comply with the order of supervision

issued to her for the duration of the probation supervision period. The order of suspension required A.P. to submit to drug screens; comply with a curfew; complete certain programs including mental health/substance evaluation and all recommended treatment; attend school as legally required or obtain her GED; complete anger control counseling; and complete Cross Systems of Care Services and follow all recommended treatment.

[4] On June 26, 2017, the probation office filed a petition to modify supervision alleging that A.P. violated the terms of her supervision and that, on June 14, 2017, she tested positive for marijuana on a urine drug screen. On July 13, 2017, the probation office filed a supplemental petition to modify alleging that A.P. was required to participate in Cross Systems of Care Services and that, according to a monthly report completed by a therapist on July 9, 2017, A.P. met for only one session in June and refused to attend a scheduled family session with the therapist. The petition alleged that, due to her lack of participation, the therapist who was referred through Cross Systems of Care recommended case closure.

[5] On July 24, 2017, the court held a hearing at which A.P. and her care coordinator, probation officer, and parents were present. The court found that A.P. violated the terms of her supervision, that she used marijuana while on probation, and that she had three referrals for substance abuse treatment and refused to participate in services. The court awarded wardship of A.P. to the DOC for housing in any correctional facility for children and stated that it would recommend that she have a thirty-day intake and assessment.

## *Discussion*

The juvenile court is given "wide latitude and great flexibility" in determining the specific disposition for a child adjudicated a delinquent. *D.A. v. State*, 967 N.E.2d 59, 65 (Ind. Ct. App. 2012). However, its discretion is circumscribed by Ind. Code § 31-37-18-6, which provides:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
>   (A) in the least restrictive (most family like) and most appropriate setting available; and
>
>   (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

A disposition will not be reversed absent a showing of an abuse of the juvenile court's discretion, which occurs when the juvenile court's order is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences that can be drawn therefrom. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010).

[7] A.P. asserts the court abused its discretion in sentencing her to the DOC when she had no history of delinquency, her probation violations were relatively minor infractions, and there were less restrictive alternatives available. She argues that, by smoking marijuana and not fully engaging with her therapist, she did not pose further risk to anyone other than perhaps herself; her overall risk assessment score placed her in the low risk to reoffend category; she took responsibility for her behavior, admitting the initial offense and the allegations in the petitions to revoke; and her parents were paying her costs and fees, were present for every hearing, displayed support and a firm but fair disciplinary approach, and were strongly opposed to placement in the DOC. She states that she was just twenty-six days away from her eighteenth birthday when she was committed to the DOC, and she earned her GED and completed a mentoring program to which she had been referred.

[8] The State maintains that the court did not abuse its discretion, that A.P. had been placed on supervised probation with a suspended commitment to the DOC for serious and violent felony offenses, that she violated her probation by testing positive for marijuana and not participating in treatment and therapy, and that, despite her parents' best efforts, A.P. continued to use marijuana and did not take her mental health medications.

[9] The record reveals that, in September 2016, A.P. was adjudicated delinquent for fighting another person during which she stabbed the person with a knife in the arm and cheek, causing the person to go to the hospital, and that the court placed her under the supervision of probation for twenty-four months. The

court also awarded wardship of A.P. to the DOC and suspended the wardship on the condition that she comply with the order of supervision during the probation supervision period. The court told A.P.: "[A.P.], you need to understand, we've got this referral for Cross Systems of Care and if you don't cooperate with them, the next thing the Court may be looking at is placing you outside of your parents' home in a placement facility or the Department of Corrections." Transcript Volume 2 at 54. The court also said "you need to be sure that when you talk with the folks from Cross Systems of Care – you're old enough to ask intelligent questions and about what's expected of you and – but again, these services are to help you learn to manage your anger so that, as an adult, you don't have any more involvement with the criminal justice system." *Id.* A.P.'s probation officer later filed petitions alleging A.P. had tested positive for marijuana and had not complied with the term of her supervision requiring her to participate in Cross Systems of Care services.

[10] At the July 24, 2017 hearing, the State indicated that A.P. had not complied with Cross Systems of Care and that probation was out of options. A.P.'s attorney stated they tried to locate facilities to take A.P. as opposed to the DOC but that A.P. would turn eighteen in August and due to her history none of the facilities would accept her. The court asked if the allegation that she refused to cooperate with the therapist at Cross Systems of Care was true, and A.P. replied affirmatively. A.P.'s care coordinator testified that three referrals had been made for her, that the family initiated the second referral and A.P. failed to follow through with that program, that a third referral was made and she had

some ups and downs and continues to test positive for marijuana and there was a little issue with therapists, and that the last report received was that the third referral had agreed to have A.P. return. The coordinator testified that A.P. successfully completed a mentoring program and obtained her GED.

[11] A.P.'s probation officer testified that A.P. was required to participate in substance abuse treatment, home based therapy, and drug screens, that in the prior month she had not been participating in therapy, that with substance abuse there had been some issues with her actually participating during the sessions and she was suspended for a period of time, and that her understanding was that the referral was reconsidering A.P. and she had an appointment to see if they would take her back. The probation officer further testified that A.P. is also supposed to be taking two medications but that she is not doing so. When asked her recommendation for A.P., the probation officer responded "[w]ell, unfortunately, we weren't able to find any agencies that will take her for the 30 day diagnostic evaluation that we were hoping to have done because of her age and because of her history of violence. So, the only real option right now would be DOC." *Id.* at 84. The probation officer identified eight placement options that had been contacted regarding local placement for A.P. and indicated that two placement facilities were still reviewing for A.P. and were pending.

[12] When asked why one of the placement facilities was considered a failure and closed out, A.P. indicated that her substance abuse counselor had her husband do the mouth swabs, that it was just a lot of sexual harassment and she felt very

uncomfortable, that she contacted her mentor, which was why it was closed out, and that she was participating. A.P. indicated that, if the court would allow her back on probation or to be accepted at one of the out of home placements, her goal would be to obtain a job and get into college. When asked if she knew she was supposed to complete Cross Systems of Care as part of her probation including substance abuse treatment, and that she was not to use substances while on probation, she responded affirmatively. She indicated that DCS became involved in the case of her treatment by her counselor's husband and took no further action. She indicated she had not met with her therapist in the month of July. A.P.'s father testified that she had done great until the last few months, that he thought she was influenced by friends and she just wanted to rebel a little bit to try to show that she wanted to be grown up, and that as parents they had to step back and let her bump her head and see that the court system is not playing and this is serious, but he also indicated that that he did not think placement in the DOC was going to help her.

[13] The court stated that "probation has exhausted all our options and Cross Systems of Care is our most intensive option that we can provide" and that due to the serious nature of the underlying charges, it would commit A.P. to the DOC. *Id.* at 95. In its written dispositional order, the court found in part that A.P. was given a suspended commitment in September 2016 and placed on probation for twenty-four months, the probation terms included a requirement for substance abuse evaluation and successful completion of all recommended treatment and a referral to Cross Systems of Care, that A.P. used marijuana

while on probation, and that she had three referrals for substance abuse treatment and refused to participate in services. It further found that A.P. refused to participate in therapy that was referred by Cross Systems of Care; she has mental health issues and refuses to take her medication, she has had three to five acute hospitalizations, has received intensive outpatient services, and has been in residential care; Cross Systems of Care attempted to place her at several facilities which refused to accept her for placement; she would turn eighteen on August 19, 2017; she needs mental health and substance abuse treatment and education which she refuses to participate in; and that probation has exhausted all services available. The court also indicated that A.P. has special needs that require services for care and treatment that cannot be provided in the home and that reasonable efforts were made by the probation department to prevent the need for removal and that A.P. refuses to cooperate. The court awarded wardship of A.P. to the DOC for housing in any correctional facility for children.

## *Conclusion*

[14] Based upon the record and under the circumstances, we cannot say that the court abused its discretion in concluding that A.P. violated the terms and conditions of her supervision with the probation department and in awarding wardship of her to the DOC for housing in a correctional facility for children. *See D.E. v. State*, 962 N.E.2d 94, 97 (Ind. Ct. App. 2011) (noting that the juvenile had presented the option of placement at a residential treatment center and that the trial court instead placed the juvenile in a DOC facility because

attempts to rehabilitate his behavior were unsuccessful; observing that the juvenile was on probation when he committed the acts underlying the adjudication, had already violated that probation by testing positive for marijuana, and had been suspended or expelled from multiple schools; and holding that under the circumstances the court's placement in the DOC was not an abuse of discretion).

[15] For the foregoing reasons, we affirm the court's order.

[16] Affirmed.

Baker, J., and Riley, J., concur.